#97928

SEALED

CLERK US DISTRICT COURT
NORTHERN DIST. OF TX
FILED

2017 FEB 21  PM 12: 51

DEPUTY CLERK_____ AA

## UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF TEXAS
## DALLAS DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA *ex rel.* RUDY MICHAEL SHAW and MICHAEL HURLEY, <br><br> Plaintiffs, <br><br> v. <br><br> PREM REDDY, M.D., PRIME HEALTHCARE SERVICES, INC., PRIME HEALTHCARE FOUNDATION, INC., PRIMERA MEDICAL TECHNOLOGIES PVT. LTD, DALLAS MEDICAL CENTER, LLC, HARLINGEN MEDICAL CENTER, LIMITED PARTNERSHIP, KNAPP MEDICAL CENTER, PRIME HEALTHCARE SERVICES – BLUE SPRINGS, LLC, PRIME HEALTHCARE SERVICES – GADSDEN, LLC, PRIME HEALTHCARE SERVICES – GARDEN CITY, LLC, PRIME HEALTHCARE SERVICES – KANSAS CITY, LLC, PRIME HEALTHCARE SERVICES – LANDMARK, LLC, PRIME HEALTHCARE SERVICES – LEHIGH ACRES, LLC, PRIME HEALTHCARE SERVICES – LOWER BUCKS, LLC, PRIME HEALTHCARE SERVICES – MESQUITE, LLC, PRIME HEALTHCARE SERVICES – MONROE, LLC, PRIME HEALTHCARE SERVICES – NORTH VISTA, LLC, PRIME HEALTHCARE SERVICES – PAMPA, LLC, PRIME HEALTHCARE SERVICES – PORT HURON, LLC, PRIME HEALTHCARE SERVICES – PROVIDENCE, LLC, PRIME HEALTHCARE SERVICES – RENO, LLC, PRIME HEALTHCARE | ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) |

**3-17CV0482-G**

Case No. _____

**FILED IN CAMERA AND UNDER SEAL**

**JURY TRIAL DEMANDED**

SERVICES – ROXBOROUGH, LLC,              )
PRIME HEALTHCARE SERVICES –              )
SAINT CLARE'S, LLC, PRIME                )
HEALTHCARE SERVICES – SAINT              )
JOHN LEAVENWORTH, LLC, PRIME             )
HEALTHCARE SERVICES – ST.                )
MARY'S PASSAIC, LLC, PRIME               )
HEALTHCARE SERVICES – ST.                )
MICHAEL'S, LLC, PRIME                    )
HEALTHCARE SERVICES –                    )
SUBURBAN HOSPITAL, LLC,                  )
PRIME HEALTHCARE FOUNDATION              )
– COSHOCTON, LLC, PRIME                  )
HEALTHCARE FOUNDATION – EAST             )
LIVERPOOL, LLC, and PRIME                )
HEALTHCARE FOUNDATION –                  )
SOUTHERN REGIONAL, LLC,                  )
                                         )
        Defendants.                      )
_____      )

## COMPLAINT

On behalf of the United States of America ("United States") and themselves,

relators Rudy Michael Shaw and Michael Hurley ("Relators") file this *qui tam*

complaint against Prem Reddy, M.D. ("Reddy"), Prime Healthcare Services, Inc.

("Prime"), Prime Healthcare Foundation, Inc. ("Foundation"), PrimEra Medical

Technologies Pvt. Ltd, ("PrimEra"), Dallas Medical Center, LLC, Harlingen Medical

Center, Limited Partnership, Knapp Medical Center, Prime Healthcare Services –

Blue Springs, LLC, Prime Healthcare Services – Gadsden, LLC, Prime Healthcare

Services – Garden City, LLC, Prime Healthcare Services – Kansas City, LLC, Prime

Healthcare Services – Landmark, LLC, Prime Healthcare Services – Lehigh Acres,

LLC, Prime Healthcare Services – Lower Bucks, LLC, Prime Healthcare Services –

Mesquite, LLC, Prime Healthcare Services – Monroe, LLC, Prime Healthcare Services – North Vista, LLC, Prime Healthcare Services – Pampa, LLC, Prime Healthcare Services – Port Huron, LLC, Prime Healthcare Services – Providence, LLC, Prime Healthcare Services – Reno, LLC, Prime Healthcare Services – Roxborough, LLC, Prime Healthcare Services – Saint Clare's, LLC, Prime Healthcare Services – Saint John Leavenworth, LLC, Prime Healthcare Services – St. Mary's Passaic, LLC, Prime Healthcare Services – St. Michael's, LLC, Prime Healthcare Services – Suburban Hospital, LLC, Prime Healthcare Foundation – Coshocton, LLC, Prime Healthcare Foundation – East Liverpool, LLC, and Prime Healthcare Foundation – Southern Regional, LLC (collectively "Defendants"), and allege as follows:

## INTRODUCTION

1.     This is a civil action to recover damages and penalties on behalf of the United States arising from false claims and statements made, caused, and/or presented by the Defendants in violation of the False Claims Act, 31 U.S.C. § 3729 *et seq.* ("False Claims Act").

2.     The False Claims Act allows an individual, known as a relator or whistleblower, to file an action on behalf of the Government for violations of the False Claims Act and receive a portion of any recovery as an award. 31 U.S.C. § 3730. Under the False Claims Act, the complaint must be filed under seal, without service on the defendants, to enable the Government to conduct its own investigation

without the defendants' knowledge and to allow the Government an opportunity to intervene in the action.

3.     Defendant Reddy is a well-known cardiologist and owner of Defendants Prime, Foundation, and upon information and belief, PrimEra. Reddy, through either Prime or Foundation, purchases distressed hospitals (including, but not limited to, those named in this Complaint) and turns them into profit centers through aggressive and fraudulent billing practices. Reddy operated all of his companies as one "Prime" brand.

4.     Relators are former senior level employees of Defendant Dallas Medical Center, LLC and, as such, were privy to and a part of multiple conversations and meetings with Reddy and other executives of Prime and Foundation regarding the corporate policies and expectations of all affiliated hospitals.

5.     Of the fraudulent policies put into place by Reddy and other executives of Prime, Foundation, and the hospitals, four of the most egregious fraudulent corporate policies were: (1) improperly admitting patients age sixty-five or over through the Emergency Department instead of discharging them or treating them as outpatient in order to increase reimbursement amounts because they had Medicare; (2) altering patient charts to guarantee maximum reimbursement; (3) submitting claims for reimbursement for accounts that have been upcoded by Defendant PrimEra; and (4) retaining Medicare overpayments.

## RELATORS

6.      Mr. Shaw is a Texas Registered Nurse who worked for Defendant Dallas Medical Center, LLC between 2003 and 2016, most recently as the Director of the Emergency Department and Intensive Care Unit and has personal, non-public information regarding the violations of the False Claims Act described herein.

7.      Mr. Hurley is an experienced healthcare financial manager who worked for Defendant Dallas Medical Center, LLC between August, 2015 and July, 2016 as the Director of the Revenue Cycle and has personal, non-public information regarding the violations of the False Claims Act described herein.

8.      Furthermore, Relators qualify as the "original source" of the allegations made pursuant to 31 U.S.C. § 3730(e)(4)(B). Specifically, the violations alleged herein are based upon Relators' personal knowledge, expertise, and non-public documents made available to Relators during the course of Relators' employment and communications with Defendants. Relators provided the information that forms the basis of the allegations made herein to the Government prior to filing this Complaint.

## DEFENDANTS

9.      Defendant Reddy has a primary residence in Apple Valley, California and a principal place of business in Ontario, California.

10.     Defendant Prime is a Delaware for-profit corporation with a principal place of business in Ontario, California.

11.     Defendant Foundation is a Delaware non-profit corporation with a principal place of business in Ontario, California.

12.    Defendant PrimEra is an Indian private, non-government company limited by shares, with a registered address of 1-98/9/6/MT/9-A,B and C, 9th Floor, Melange Tower No. 23/37, Madhapur, Serilingampally Mandal Hyderabad TG 500081 India.

13.    Reddy, through Prime and/or Foundation, has acquired dozens of hospitals across the country ("Prime Hospitals") to be operated as part of the "Prime" brand, including, but not limited to,:

  a. Dallas Medical Center ("DMC"), operated by Defendant Dallas Medical Center, LLC with a principal place of business in Dallas, Texas and acquired by Prime in or around 2012;

  b. Harlingen Medical Center, operated by Defendant Harlingen Medical Center, Limited Partnership, with a principal place of business in Harlingen, Texas and acquired by Prime in or around 2011;

  c. Knapp Medical Center, operated by Defendant Knapp Medical Center, with a principal place of business in Weslaco, Texas and acquired by Prime in or around 2013;

  d. St. Mary's Medical Center, operated by Defendant Prime Healthcare Services – Blue Springs, LLC, with a principal place of business in Blue Springs, Missouri and acquired by Prime in or around 2015;

6

e.    Riverview Regional Medical Center, operated by Defendant Prime Healthcare Services – Gadsden, LLC, with a principal place of business in Gadsden, Alabama and acquired by Prime in or around 2015;

f.    Garden City Hospital, operated by Defendant Prime Healthcare Services – Garden City, LLC, with a principal place of business in Garden City, Michigan and acquired by Prime in or around 2014;

g.    St. Joseph Medical Center; operated by Defendant Prime Healthcare Services – Kansas City, LLC, with a principal place of business in Kansas City, Missouri and acquired by Prime in or around 2015;

h.    Landmark Medical Center, operated by Defendant Prime Healthcare Services – Landmark, LLC, with a principal place of business in Woonsocket, Rhode Island and acquired by Prime in or around 2013;

i.    Lehigh Regional Medical Center, operated by Defendant Prime Healthcare Services – Lehigh Acres, LLC, with a principal place of business in Lehigh Acres, Florida and acquired by Prime in or around 2016;

j.    Lower Bucks Hospital, operated by Defendant Prime Healthcare Services – Lower Bucks, LLC, with a principal place of business in Bristol, Pennsylvania and acquired by Prime in or around 2012;

k.   Dallas Regional Medical Center, operated by Defendant Prime
     Healthcare Services – Mesquite, LLC, with a principal place of
     business in Mesquite, Texas and acquired by Prime in or around
     2015;

l.   Monroe Hospital, operated by Defendant Prime Healthcare
     Services – Monroe, LLC, with a principal place of business in
     Bloomington, Indiana and acquired by Prime in or around 2014;

m.   North Vista Hospital, operated by Defendant Prime Healthcare
     Services – North Vista, LLC, with a principal place of business in
     North Las Vegas, Nevada and acquired by Prime in or around
     2015;

n.   Pampa Regional Medical Center, operated by Defendant Prime
     Healthcare Services – Pampa, LLC, with a principal place of
     business in Pampa, Texas and acquired by Prime in or around
     2012;

o.   Lake Huron Medical Center, operated by Defendant Prime
     Healthcare Services – Port Huron, LLC, with a principal place of
     business in Port Huron, Michigan and acquired by Prime in or
     around 2015;

p.   Providence Medical Center, operated by Defendant Prime
     Healthcare Services – Providence, LLC, with a principal place of

8

business in Kansas City, Kansas and acquired by Prime in or around 2013;

q.    Saint Mary's Regional Medical Center, operated by Defendant Prime Healthcare Services – Reno, LLC, with a principal place of business in Reno, Nevada and acquired by Prime in or around 2012;

r.    Roxborough Memorial Hospital, operated by Defendant Prime Healthcare Services – Roxborough, LLC, with a principal place of business in Philadelphia, Pennsylvania and acquired by Prime in or around 2012;

s.    Saint Clare's Hospital – Dover, operated by Defendant Prime Healthcare Services – Saint Clare's, LLC, with a principal place of business in Dover, New Jersey and acquired by Prime in or around 2015;

t.    Saint Clare's Hospital – Denville, operated by Defendant Prime Healthcare Services – Saint Clare's, LLC, with a principal place of business in Denville, New Jersey and acquired by Prime in or around 2015;

u.    Saint John Hospital, operated by Defendant Prime Healthcare Services – Saint John Leavenworth, LLC, with a principal place of business in Leavenworth, Kansas and acquired by Prime in or around 2013;

v.  St. Mary's General Hospital, operated by Defendant Prime
    Healthcare Services – St. Mary's Passaic, LLC, with a principal
    place of business in Passaic, New Jersey and acquired by Prime in
    or around 2014;

w.  Saint Michael's Medical Center, operated by Defendant Prime
    Healthcare Services – St. Michael's, LLC, with a principal place of
    business in Newark, New Jersey and acquired by Prime in or
    around 2015;

x.  Suburban Community Hospital, operated by Defendant Prime
    Healthcare Services – Suburban Hospital, LLC, with a principal
    place of business in East Norriton, Pennsylvania and acquired by
    Foundation in or around 2016;

y.  Coshocton Regional Medical Center, operated by Defendant Prime
    Healthcare Foundation – Coshocton, LLC, with a principal place
    of business in Coshocton, Ohio and acquired by Foundation in or
    around 2016;

z.  East Liverpool City Hospital, operated by Defendant Prime
    Healthcare Foundation – East Liverpool, LLC with a principal
    place of business in East Liverpool, Ohio and acquired by
    Foundation in or around 2016; and

aa. Southern Regional Medical Center, operated by Defendant Prime
    Healthcare Foundation – Southern Regional, LLC, with a

10

principal place of business in Riverdale, Georgia and acquired by Foundation in or around 2016.

## JURISDICTION AND VENUE

14.    Relators bring this action on behalf of themselves and the United States pursuant to 31 U.S.C. § 3730(b)(1).

15.    This Court has subject matter jurisdiction over Plaintiffs' claims arising under the False Claims Act, 31 U.S.C. § 3729 *et seq.*, pursuant to 31 U.S.C. § 3732(a) and 28 U.S.C. §§ 1331 and 1345. This Court has supplemental jurisdiction to entertain common law or equitable claims pursuant to 28 U.S.C. § 1367(a).

16.    This Court has personal jurisdiction over Defendants pursuant to 31 U.S.C. § 3732(a) because Defendants can be found in, reside in, and/or have transacted business within this Court's jurisdiction.

17.    Venue is proper in this district under 28 U.S.C. § 1391(b)-(c), and 31 U.S.C. § 3732(a) because at least one Defendant resides in this district and because alleged violations of the False Claims Act occurred in this district.

## BACKGROUND

### A.    The Medicare Program

18.    Title XVIII of the Social Security Act, 42 U.S.C. §§ 1395, *et seq.*, established the Health Insurance for the Aged and Disabled Program or the Medicare Program ("Medicare"). Medicare is available to individuals over the age of sixty-five and individuals under the age of sixty-five with certain disabilities and/or diseases.

11

19.     Original Medicare is a fee-for-service healthcare plan that consists of two parts, Part A Medicare and Part B Medicare. Part A Medicare pays for hospital care, hospice care, skilled nursing facility care, and some home health care. Medicare Part B covers medically necessary services and preventative services.

## DEFENDANTS' MISCONDUCT

### A.     Admitting Patients Through The Emergency Department

20.     Since being acquired by Prime and/or Foundation, the Prime Hospitals have been improperly admitting patients age sixty-five or older that present at the Emergency Department to maximize Medicare reimbursement.

21.     Following the acquisition of each Prime Hospital, Reddy, through his agents, instituted a series of Emergency Department policies designed to maximize Medicare reimbursement such as expecting employees to admit all patients age sixty-five or over that present to the Emergency Department and find any reason they could to justify admission.

22.     To ensure compliance with this expectation, daily meetings were held with corporate executives to discuss the reasons why any patient age sixty-five or over was not admitted and other ideas to generate revenue such as transferring patients that were denied surgery or other procedures to the Emergency Department to be admitted so the surgery would be covered and upcoding claims.

23.     As the Director of the Emergency Department and Intensive Care Unit at DMC, Relator Shaw was constantly discussing Emergency Department admissions with his superiors and other policies including a quota requirement that

20% of all patients, regardless of age and insurance, that presented to DMC's Emergency Department were to be admitted. As part of his duties, Mr. Shaw was responsible for keeping the reports as to who was admitted into the hospital and reviewing the patients' information.

24.     Each morning at 8:30 A.M. at DMC, Mr. Shaw, DMC executives and directors, other area Prime Hospital executives and directors, and Prime corporate officer Deborah Meeks, the Chief Nursing Officer of the Southern Region of Prime Hospitals and agent of Reddy, would meet to review Emergency Department patients from the previous day. Ms. Meeks, as the agent of Reddy, directed the corporate policy in the Southern Region that all patients age sixty-five or over that present to the Emergency Department were to be admitted.

25.     During those meetings, Mr. Shaw was often tasked with the responsibility of investigating the reasoning behind any patient age sixty-five or over who was not admitted. While the reason was obvious to Mr. Shaw and the physicians, the patient's condition did not justify admission, the corporate policy was clear: any patient age sixty-five or over was to be admitted regardless of his or her individual needs and condition.

**B.     Altering Patient Charts For Higher Reimbursement**

26.     Since being acquired by Prime and/or Foundation, the Prime Hospitals have been improperly altering patient charts to assure the highest reimbursement rate.

13

27.   In the first of his monthly teleconference meetings with Reddy and other executives of Prime and Foundation such as Sheila Reddy, Corporate Vice President of Revenue Cycle at Prime ("Sheila"), Relator Hurley was asked by Reddy why certain patients were denied by Medicare for "one day stay" claims. Mr. Hurley responded that Medicare does not reimburse for one day inpatient stays. For those particular patients, Reddy ordered Mr. Hurley to manipulate the charts and resubmit to assure reimbursement because that was "the corporate way." When Mr. Hurley refused, Reddy ordered him to send the list to Sheila so she could alter the charts and resubmit at a corporate level. Mr. Hurley never sent Sheila the information, so it is unknown the status of those claims, however Reddy instituted a corporate policy that all future patients were required to stay in the hospital long enough to capture the Medicare reimbursement.

28.   Following this meeting, Reddy instructed Mr. Hurley to teach all employees at DMC the corporate policy and show them how to alter the patient information to assure that all patients are coded as having a status that would get the highest possible reimbursement. For instance, if a patient was scheduled for an outpatient procedure but it was determined that the reimbursement rate was higher if the patient was admitted, then Reddy's instructions were for staff to work with physicians to admit the patient, perform the procedure inpatient, and then submit for reimbursement at the inpatient rates.

29.    While Mr. Hurley never instructed his team or others to do this, directors of local Prime Hospitals informed Mr. Hurley that their respective hospitals were also altering patients' charts because that was "the corporate way."

## C.    Sending Claims To India To Be Upcoded

30.    Since being acquired by Prime and/or Foundation, the Prime Hospitals have been submitting claims to Medicare that were changed by Defendant PrimeEra in India to reflect a higher level of care than actually performed.

31.    Relator Hurley first became aware of this corporate policy in or around 2015, following Reddy's acquisition of PrimEra. Since then, Mr. Hurley had weekly telephone conferences with PrimEra and others regarding how the claims were being coded. When concerns were brought up that claims were coded at a higher rate than actually performed, PrimEra would disregard the concerns and respond that they were the "experts" and knew "the corporate way." For example, in or around May, 2016, Michelle Terry, Manager of Wound Care at DMC, complained to Mr. Hurley that all of her accounts were being denied because PrimEra was coding claims at a different rate than the medical records justified. When Mr. Hurley brought these concerns to PrimEra's attention during a weekly telephone conference, these concerns were also ignored.

32.    Mr. Hurley, suspicious of these and other concerns from other members, performed an audit on all Emergency Department accounts at DMC and discovered that each account was being billed to Medicare and other insurance programs at a Level 5, the highest possible level. For example, when Mr. Hurley visited the

Emergency Department at DMC for a fracture in or around March, 2016, a well-known Level 2, DMC submitted the bill to his insurance company at a Level 5.

**D.    Retaining Overpayments**

33.    Since being acquired by Prime and/or Foundation, the Prime Hospitals have been retaining Medicare overpayments.

34.    The corporate policy at Prime, Foundation, and the Prime Hospitals is to use any and all means using "the corporate way" to retain overpayments by Medicare and other insurance programs.

35.    One way of retaining overpayments was by editing the Medicare Credit Balance Reports. Each quarter, hospitals are required to send to Medicare reports which include accounts that are in a credit balance, meaning they are potentially overpaid and thus need to be returned. At DMC, these reports were submitted never showing any account in credit balance.

36.    When Relator Hurley spoke with Sheila about his concerns regarding the lack of credit balances in or around December, 2015, Sheila took away the reporting responsibility from Mr. Hurley and DMC, and all future Medicare Credit Balance Reports were submitted by Sheila on behalf of DMC.

37.    Another way that Defendants improperly retained overpayments was following any request for repayment, Defendants refused to pay and would use the threat of litigation against agents of the Government such as managed Medicare companies.

38.     Originally, all overpayment requests were sent directly to corporate to be handled. However, in an email communication to all Prime Hospital Business Directors, including Relator Hurley, Sheila transferred those responsibilities to the individual hospitals, with the instruction that no overpayments were to be repaid. Instead, the Prime Hospitals were to forward the requests to Sheila and her team for a full review. If Sheila decided not to issue a refund, they would refuse to pay the refund, terminate the contract, and/or threaten litigation. Mr. Hurley was not aware of any overpayment that was repaid during his time working for Defendants.

COUNT I

PRESENTMENT OF CLAIMS IN VIOLATION OF THE FALSE CLAIMS ACT (31 U.S.C. § 3729(a)(1)(A))

39.     Relators re-allege and incorporate by reference the allegations contained in paragraphs 1 through 38 as if fully stated in this Count.

40.     This is a claim for treble damages and civil penalties under the False Claims Act, 31 U.S.C. § 3729(a)(1)(A).

41.     By virtue of the acts described above, Defendants knowingly presented or caused to be presented to the United States Government false or fraudulent claims.

42.     Such claims were false or fraudulent because Defendants falsely submitted or caused to be submitted claims to Medicare that were not eligible for reimbursement and/or altered.

43.     The United States, unaware of the falsity of the claims made or caused to be made by the Defendants, paid Defendants for claims that should not have been

17

COUNT II
FALSE STATEMENTS IN VIOLATION OF THE FALSE CLAIMS ACT (31 U.S.C. § 3729(a)(1)(B))

49.     Relators re-allege and incorporate by reference the allegations contained in paragraphs 1 through 38 as if fully stated in this Count.

50.     This is a claim for treble damages and civil penalties under the False Claims Act, 31 U.S.C. § 3729(a)(1)(B).

51.     By virtue of the acts described above, Defendants made, used, and caused to be made and used, false records and statements that were material and caused or contributed to improper payments of Federal funding to Defendants.

52.     Specifically, Defendants made, used, and caused to be made and used, material false records and statements in relation to claims that were not eligible for reimbursement and/or altered.

53.     The United States, unaware of the falsity of the records and statements, paid Defendants for claims that would otherwise not have been allowed.

54.     Payment by the United States for all claims submitted or caused to be submitted by Defendants was conditioned upon Defendants' compliance with the laws and regulations described herein.

55.     By knowingly, willfully, or recklessly making, or causing others to make, false statements and certifications material to the United States' decision to pay on false claims, Defendants have defrauded the United States in contravention of the False Claims Act, 31 U.S.C. § 3729(a)(1)(B), to the damage of the Treasury of the

19

United States, by causing the United States to pay out money that it was not obligated to pay. In carrying out these wrongful acts, Defendants have engaged in a protracted course and pattern of fraudulent conduct that was material to the United States' decision to pay these false claims.

56.     As a direct and proximate result of Defendants' fraudulent and/or illegal actions and pattern of fraudulent conduct, the United States has paid directly or indirectly false claims that it would not otherwise have paid.

57.     Damages to the United States include, but are not limited to, three times the full value of all such fraudulent claims.

58.     Each and every such fraudulent claim is also subject to a civil fine under the False Claims Act as modified by the Federal Civil Penalties Inflation Act Improvements Act of 2015.

COUNT III

RETENTION OF OVERPAYMENTS IN VIOLATION OF THE FALSE CLAIMS
ACT (31 U.S.C. § 3729(a)(1)(G))

59.     Relators re-allege and incorporate by reference the allegations contained in paragraphs 1 through 38 as if fully stated in this Count.

60.     This is a claim for treble damages and civil penalties under the False Claims Act, 31 U.S.C. § 3729(a)(1)(G).

61.     By virtue of the acts described above, Defendants have knowingly concealed and/or knowingly and improperly avoided an obligation to transmit money to the Government. Specifically, Defendants knew or should have known that they

20

received millions of dollars in payments from contracts that they were not eligible to receive.

62.   Once known, even if the improper payments were not fixed or clearly defined, Defendants had an obligation under Section 1128J(d) of the Social Security Act to remit or report such funds to the Government within sixty days. Defendants have not reported or returned the improper payments described herein.

63.   By knowingly concealing and/or knowingly and improperly avoiding its obligation to transmit money recovered to the Federal Government, Defendants have defrauded the United States in contravention of the False Claims Act, 31 U.S.C. § 3729(a)(1)(G), to the damage of the Treasury of the United States, by causing the United States to be deprived of funds that rightfully belong to the Government.

64.   As a direct and proximate result of Defendants' fraudulent and/or illegal actions and fraudulent conduct, the United States has been deprived of funds to which it is lawfully entitled and which were improperly paid to Defendants.

65.   Damages to the United States include, but are not limited to, three times the full value of all such fraudulent claims.

66.   Each and every such fraudulent claim is also subject to a civil fine under the False Claims Act as modified by the Federal Civil Penalties Inflation Act Improvements Act of 2015.

WHEREFORE, Relators request that judgment be entered against Defendants, ordering that:

## JURY DEMAND

A trial by jury is hereby demanded.


Dated: February 21, 2017


By: s/ *Theodore Anderson*
Theodore C. Anderson
State Bar No. 01215700
*tca@kilgorelaw.com*
Alexandra A. Treadgold
State Bar No. 24094985
*aat@kilgorelaw.com*
KILGORE & KILGORE PLLC
3109 Carlisle Street
Dallas, Texas 75204
Phone: (214) 969-9099
Fax: (214) 379-0843
*Local Counsel*

And

Alan J. Konigsberg
NY Bar No. 113-1168
*akonigsberg@levylaw.com*
Michael J. DeRienzo
NY Bar No. 531016
*mderienzo@levylaw.com*
LEVY KONIGSBERG LLP
800 Third Ave., 11th Floor
New York, NY 10022
Phone: (212) 605-6200
Fax: (212) 605-6290
*Attorneys for the Relators*


23

SEALED

CLERK US DISTRICT COURT
NORTHERN DIST. OF TX
FILED

2017 FEB 21 PM 12: 51

DEPUTY CLERK ___

JS 44-TXND (Rev. 12/12)

# CIVIL COVER SHEET

The JS 44 civil cover sheet and the information contained herein neither replace nor supplement the filing and service of pleadings or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet. *(SEE INSTRUCTIONS ON NEXT PAGE OF THIS FORM.)*

## I. (a) PLAINTIFFS
United States of America ex rel. Rudy Michael Shaw and Michael Hurley

**DEFENDANTS**
Prem Reddy, M.D. et al.

**(b)** County of Residence of First Listed Plaintiff _____
*(EXCEPT IN U.S. PLAINTIFF CASES)*

County of Residence of First Listed Defendant   California
*(IN U.S. PLAINTIFF CASES ONLY)*
NOTE:   IN LAND CONDEMNATION CASES, USE THE LOCATION OF
THE TRACT OF LAND INVOLVED.

**(c)** Attorneys *(Firm Name, Address, and Telephone Number)*
Kilgore & Kilgore, PLLC
3109 Carlisle
Dallas, Texas 7524

Attorneys *(If Known)*

3-17CV0482-G

## II. BASIS OF JURISDICTION *(Place an "X" in One Box Only)*

☒ 1   U.S. Government
Plaintiff

☐ 3   Federal Question
*(U.S. Government Not a Party)*

☐ 2   U.S. Government
Defendant

☐ 4   Diversity
*(Indicate Citizenship of Parties in Item III)*

## III. CITIZENSHIP OF PRINCIPAL PARTIES *(Place an "X" in One Box for Plaintiff*
*(For Diversity Cases Only)* *and One Box for Defendant)*

|  | PTF | DEF |  | PTF | DEF |
|---|---|---|---|---|---|
| Citizen of This State | ☐ 1 | ☐ 1 | Incorporated or Principal Place of Business In This State | ☐ 4 | ☐ 4 |
| Citizen of Another State | ☐ 2 | ☐ 2 | Incorporated and Principal Place of Business In Another State | ☐ 5 | ☐ 5 |
| Citizen or Subject of a Foreign Country | ☐ 3 | ☐ 3 | Foreign Nation | ☐ 6 | ☐ 6 |

## IV. NATURE OF SUIT *(Place an "X" in One Box Only)*

| CONTRACT | TORTS | | FORFEITURE/PENALTY | BANKRUPTCY | OTHER STATUTES |
|---|---|---|---|---|---|
| ☐ 110 Insurance | **PERSONAL INJURY** | **PERSONAL INJURY** | ☐ 625 Drug Related Seizure of Property 21 USC 881 | ☐ 422 Appeal 28 USC 158 | ☒ 375 False Claims Act |
| ☐ 120 Marine | ☐ 310 Airplane | ☐ 365 Personal Injury - Product Liability | ☐ 690 Other | ☐ 423 Withdrawal 28 USC 157 | ☐ 400 State Reapportionment |
| ☐ 130 Miller Act | ☐ 315 Airplane Product Liability | ☐ 367 Health Care/ Pharmaceutical | | | ☐ 410 Antitrust |
| ☐ 140 Negotiable Instrument | ☐ 320 Assault, Libel & Slander | Personal Injury | | **PROPERTY RIGHTS** | ☐ 430 Banks and Banking |
| ☐ 150 Recovery of Overpayment & Enforcement of Judgment | ☐ 330 Federal Employers' Liability | Product Liability | | ☐ 820 Copyrights | ☐ 450 Commerce |
| ☐ 151 Medicare Act | ☐ 340 Marine | ☐ 368 Asbestos Personal Injury Product Liability | | ☐ 830 Patent | ☐ 460 Deportation |
| ☐ 152 Recovery of Defaulted Student Loans (Excludes Veterans) | ☐ 345 Marine Product Liability | **PERSONAL PROPERTY** | **LABOR** | ☐ 840 Trademark | ☐ 470 Racketeer Influenced and Corrupt Organizations |
| ☐ 153 Recovery of Overpayment of Veteran's Benefits | ☐ 350 Motor Vehicle | ☐ 370 Other Fraud | ☐ 710 Fair Labor Standards Act | **SOCIAL SECURITY** | ☐ 480 Consumer Credit |
| ☐ 160 Stockholders' Suits | ☐ 355 Motor Vehicle Product Liability | ☐ 371 Truth in Lending | ☐ 720 Labor/Management Relations | ☐ 861 HIA (1395ff) | ☐ 490 Cable/Sat TV |
| ☐ 190 Other Contract | ☐ 360 Other Personal Injury | ☐ 380 Other Personal Property Damage | ☐ 740 Railway Labor Act | ☐ 862 Black Lung (923) | ☐ 850 Securities/Commodities/ Exchange |
| ☐ 195 Contract Product Liability | ☐ 362 Personal Injury - Medical Malpractice | ☐ 385 Property Damage Product Liability | ☐ 751 Family and Medical Leave Act | ☐ 863 DIWC/DIWW (405(g)) | ☐ 890 Other Statutory Actions |
| ☐ 196 Franchise | | | ☐ 790 Other Labor Litigation | ☐ 864 SSID Title XVI | ☐ 891 Agricultural Acts |
| **REAL PROPERTY** | **CIVIL RIGHTS** | **PRISONER PETITIONS** | ☐ 791 Employee Retirement Income Security Act | ☐ 865 RSI (405(g)) | ☐ 893 Environmental Matters |
| ☐ 210 Land Condemnation | ☐ 440 Other Civil Rights | **Habeas Corpus:** | | **FEDERAL TAX SUITS** | ☐ 895 Freedom of Information Act |
| ☐ 220 Foreclosure | ☐ 441 Voting | ☐ 463 Alien Detainee | | ☐ 870 Taxes (U.S. Plaintiff or Defendant) | ☐ 896 Arbitration |
| ☐ 230 Rent Lease & Ejectment | ☐ 442 Employment | ☐ 510 Motions to Vacate Sentence | | ☐ 871 IRS—Third Party 26 USC 7609 | ☐ 899 Administrative Procedure Act/Review or Appeal of Agency Decision |
| ☐ 240 Torts to Land | ☐ 443 Housing/ Accommodations | ☐ 530 General | | | ☐ 950 Constitutionality of State Statutes |
| ☐ 245 Tort Product Liability | ☐ 445 Amer. w/Disabilities - Employment | ☐ 535 Death Penalty | **IMMIGRATION** | | |
| ☐ 290 All Other Real Property | ☐ 446 Amer. w/Disabilities - Other | **Other:** | ☐ 462 Naturalization Application | | |
| | ☐ 448 Education | ☐ 540 Mandamus & Other | ☐ 465 Other Immigration Actions | | |
| | | ☐ 550 Civil Rights | | | |
| | | ☐ 555 Prison Condition | | | |
| | | ☐ 560 Civil Detainee - Conditions of Confinement | | | |

## V. ORIGIN *(Place an "X" in One Box Only)*

☒ 1 Original
Proceeding

☐ 2 Removed from
State Court

☐ 3 Remanded from
Appellate Court

☐ 4 Reinstated or
Reopened

☐ 5 Transferred from
Another District
*(specify)*

☐ 6 Multidistrict
Litigation

## VI. CAUSE OF ACTION
Cite the U.S. Civil Statute under which you are filing *(Do not cite jurisdictional statutes unless diversity)*:
31 USC 3729
Brief description of cause:
False records and statements that caused improper payments of Federal funding to Defendants.

## VII. REQUESTED IN COMPLAINT:
☐ CHECK IF THIS IS A CLASS ACTION UNDER RULE 23, F.R.Cv.P.

DEMAND $

CHECK YES only if demanded in complaint:
JURY DEMAND:   ☒ Yes   ☐ No

## VIII. RELATED PENDING OR CLOSED CASE(S) IF ANY
*(See instructions):*
JUDGE _____
DOCKET NUMBER _____

DATE
02/21/2017

SIGNATURE OF ATTORNEY OF RECORD
*Theodore Anderson*

FOR OFFICE USE ONLY

RECEIPT # _____   AMOUNT _____   APPLYING IFP _____   JUDGE _____   MAG. JUDGE _____